552 So.2d 45 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Kevin P. ROMERO, Defendant-Appellant.
No. CR89-241.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
*46 G. Paul Marx and Ed Marquet, Lafayette, for defendant-appellant.
J. Nathan Stansbury, Dist. Atty., Lafayette, for plaintiff-appellee.
Before YELVERTON, KNOLL and KING, JJ.
KING, Judge.
This appeal presents for review numerous assignments of error allegedly committed by the trial court during the criminal prosecution of the defendant.
On January 6, 1988, Kevin P. Romero (hereinafter defendant) was charged by grand jury indictment with one count of first degree murder for the killing of John Ray Prejean on December 5, 1987, a violation of La.R.S. 14:30. Defendant entered a plea of not guilty and was tried by a twelve person jury. On December 3, 1988, the jury returned a unanimous verdict of guilty of first degree murder.
On December 4, 1988, the trial court sentenced defendant to life imprisonment without benefit of probation, parole or suspension of sentence, as recommended by the jury in the sentencing phase of the trial. Defendant timely appeals this conviction based on six assignments of error which are that:

*47 (1) The trial court erred in that it did not require a fair and impartial manner of fixing this case for trial, and allowed the State of Louisiana, through the District Attorney, to control the time, identity of the trial judge, and to otherwise forum shop at will during this prosecution;
(2) The trial court erred in that it required the defendant to undergo an in-court identification procedure despite an out-of-court identification which the court found to be inadmissible;
(3) The trial court erred in that it allowed the State to introduce a supposed inculpatory nod as evidence of an admission, despite its unreliable nature and the violation of defendant's Sixth Amendment Rights in its taking;
(4) The trial court erred in allowing use of certain items of clothing in an identification lineup despite the fact that the items were not admitted into evidence;
(5) The trial court erred in admitting into evidence clothes taken from the defendant which were identified as being different from those worn by the perpetrator of this offense; and
(6) The trial court erred in denial of defense motions for a mistrial, despite the willful or negligent failure of the State to abide by fair discovery procedure.
We affirm defendant's conviction.

FACTS
On December 5, 1987 at approximately 8:00 P.M., defendant walked into the Scott Bar and Grill located in Scott, Louisiana. The only people in the bar at this time were Jeanice Babin, the waitress, Leroy Pellerin, a customer, and John Ray Prejean, the owner.
The defendant walked around the counter, grabbed the waitress, pointed a gun at her head, and demanded money. When confronted by the defendant, Mr. Pellerin and Mr. Prejean began to laugh because they thought it was a joke. Defendant then fired his gun twice at Mr. Prejean striking him each time in the face. Mr. Prejean died from these gunshot wounds. Defendant fired another shot in the direction of Mr. Pellerin but apparently missed. Mr. Pellerin, however, put his face down on the bar in an attempt to make defendant believe he had been shot.
Defendant forced the waitress to go to the cash register and remove the money. While she was removing the money, defendant again shot at Mr. Pellerin and hit him in the area of the ear. Mr. Pellerin fell to the floor but was not fatally wounded. Defendant then forced the waitress to go around the bar and remove the wallets from the pockets of Mr. Prejean and Mr. Pellerin. Defendant then fled the premises.
Approximately three or four days after the crime occurred, a co-conspirator came forward and gave a confession to the police. He acknowledged that on the night of the crime, he dropped defendant off on a side street next to the bar. Thereafter, he drove off intending to pick defendant up at a designated spot after the robbery was completed. However, the co-conspirator did not return to pick up defendant because the police began arriving at the scene and he was afraid of being apprehended.
Defendant was subsequently arrested, charged, and arraigned. He entered a plea of not guilty to the crime of first degree murder. He was tried by a twelve person jury, found guilty, and sentenced to life in prison without benefit of probation, parole, or suspension of sentence.

ASSIGNMENT OF ERROR NUMBER 1
At the arraignment, the trial court granted the parties thirty days to file any motions or pleadings. Counsel for defendant filed a motion entitled "Motion for Random Selection of Trial Judge." In his motion, defendant alleged that the local court rules of the Fifteenth Judicial District Court provide for the random allotment of civil cases, but had no such provision for criminal cases and, for this reason, the State, through the District Attorney's office, had complete control over the criminal docket. Defendant alleges that the State, because of its knowledge of when a particular judge *48 would be sitting, has and uses its authority to set cases for trial based on the State's selection of a particular judge before which it wishes to try a case. Defendant further alleges that this is, in effect, forum shopping and that the same procedure of random selection of judges that applies in civil cases should apply in criminal cases in order to preserve the maximum protection of due process of law. For this reason defendant sought the random selection of a judge for his trial. The State filed an answer to defendant's motion and denied that such a right existed under State law.
A hearing on the motion was conducted on July 28, 1988. At the hearing, the Assistant District Attorney for the State and defense counsel stipulated that, if called, Assistant District Attorney, Michelle Jackson, would testify that she has the ability to make a selection of a particular trial judge in a particular case and that she does this. Additionally, counsel stipulated that the procedure in the Clerk of Court's office is to randomly assign civil cases to the different district judges but that criminal cases are not assigned by the clerk's office. The clerk's office receives from the District Attorney's office the criminal docket, prepared by the District Attorney's office, with the criminal cases fixed before particular judges based on when that judge is sitting on the criminal bench.
Robin Rhodes, an Assistant District Attorney who is the felony coordinator, testified that she is the one who makes up the criminal dockets. At the beginning of the court year, the Chief Judge gives her a schedule that indicates which weeks each judge will be sitting on the criminal bench. After she receives this schedule, she prepares the dockets for motions and trials. When asked whether or not Assistant District Attorneys request that a particular case be set with a particular judge, she responded, "[T]hey have a particular case, they'll say `I would like to try this case with Judge so and so'. If it is possible I would put it on there. Sometimes it is not possible, depending upon scheduling again."
At the completion of the hearing, the trial court took the matter under advisement and on August 1, 1988, denied defendant's motion with written reasons. The court stated:
"While the better practice may be a random allotment of criminal cases, this Court is of the opining [sic] that this motion is without merit. No evidence was offered to show that the absence of random selection prejudices the rights of the accused in any way and does not cause any unfair advantage to the State in violation of the rights of the accused.
Motion denied."
Defendant contends in his first assignment of error that the trial court erred in that it did not grant his motion to require a fair and impartial manner of fixing his case before a judge for trial, and in allowing the State of Louisiana, through the District Attorney, to control the time of trial and the particular trial judge before whom his case was tried, and to otherwise forum shop at will during his prosecution.
In response, the State submits that even if defendant's contentions have merit, he has failed to show that he was prejudiced by the State's method of allotting his case to a judge for trial. Therefore, the State claims that any error committed was harmless.
Recently, the Louisiana Supreme Court considered this issue in the case of State v. William J. Simpson, 545 So.2d 1047 (La. 1989). The Simpson case arises out of the Fifteenth Judicial District Court, the same court in which defendant was prosecuted. In Simpson, counsel for defendant filed a Motion for Random Selection of Trial Judge, almost identical to the motion filed by defendant in the case at bar. The trial court denied defendant's motion and defendant sought supervisory relief from the ruling to the Louisiana Court of Appeal, Third Circuit, which also denied relief. State v. William J. Simpson, an unreported decision bearing Number K89-244 on the Docket of this Court dated April 4, 1989. The Louisiana Supreme Court then granted defendant's application for supervisory writs and stated:

*49 "Granted. It is ordered that assignment of this case is vacated; the case is remanded to the 15th Judicial District Court which is instructed to reassign under a system where the District Attorney's office does not select the judge and where trial dates are approved by the court; otherwise denied."
On September 28, 1989, the Supreme Court granted the State's application for rehearing, 548 So.2d 1213, of the June 16, 1989 ruling in Simpson and fixed the matter for briefing and argument. The final decision in Simpson awaits this rehearing.
After Simpson, in State v. Azar, yet another case arising out of the Fifteenth Judicial District Court, the trial court granted the defendant's Motion to Continue hearing of several pretrial motions based on the decision rendered in Simpson. Defendant contended that Simpson required that the case be randomly allotted for hearing of his pretrial motions. The State applied for supervisory relief from the trial court ruling to the Louisiana Court of Appeal, Third Circuit, which denied any relief. This court, in denying the State's application for supervisory writs, stated:
"WRIT DENIED: The Supreme Court's ruling in State v. Simpson [545 So.2d 1047] No. 89-KK-0821 (La. June 16, 1989), appears to apply to all criminal cases and at all stages of the proceedings." State v. Paul J. Azar, Jr., an unreported decision bearing Number K89-693 on the Docket of the Third Circuit Court of Appeal dated June 27, 1989.
The State's application for supervisory writs in Azar to the Louisiana Supreme Court was denied. State v. Paul J. Azar, Jr., 546 So.2d 1229 (La. 1989). We note that writ denials are not decisional law and have no precedential value. Block v. Reliance Ins. Co., 433 So.2d 1040 (La. 1983). For this reason, a writ grant, from which a court has granted a rehearing, can have no precedential value either.
This court can not foretell what decision the Louisiana Supreme Court will ultimately render on this issue on rehearing in Simpson nor does this court know, if the original decision is maintained, whether it will be applied retroactively or only prospectively. Nevertheless, even if we assume the Louisiana Supreme Court on rehearing in Simpson will find error in the method of assigning criminal cases for trial in the Fifteenth Judicial District Court, and even if we assume that such decision will be applied retroactively, the defendant in this case has not shown that he has been actually prejudiced by such error.
Louisiana Code of Criminal Procedure Art. 921 defines harmless error as follows:
"A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."
Even when error is committed, if an appellate court finds beyond a reasonable doubt that the error was harmless in light of the total circumstances, defendant's conviction will not be overturned. State v. Humphrey, 412 So.2d 507 (La. 1981). A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La.1984). The defendant must show prejudice before his conviction will be reversed. State v. Sweeney, 443 So.2d 522 (La.1983).
The defendant in this case has failed to show how he was prejudiced by the State's selection of a particular trial court judge to preside over his trial. Defendant did not seek in accordance with law, to recuse the trial judge before trial alleging bias or prejudice. Defendant does not allege any bias or prejudice of the trial judge during his trial. We find none by reviewing the record on appeal. Absent any evidence whatsoever of prejudice and in light of the total circumstances of defendant's conviction, we find that any such error is harmless error and that defendant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Approximately three or four days before this case went to trial, Jeanice Babin, *50 the waitress in the bar at the time of the offense, identified the defendant during an out-of-court photographic lineup. Lieutenant Don Cobb of the Lafayette Parish Sheriff's Office went to the residence where Ms. Babin was staying and handed her a manila folder containing five photographs. She opened the folder, examined the photographs for about five or ten minutes, and then made an identification of the defendant as the person who committed the crime. Lieutenant Cobb did not single out any photograph nor pressure her in any way to make the identification. Neither the defendant nor his counsel were present during this identification and, consequently, defendant contends that this out-of-court photographic identification was illegal and tainted the subsequent in-court identification that was made of defendant by the witness at trial.
At trial, an in-court identification was performed by Ms. Babin viewing five participants, including defendant, one at a time. The participants were all dressed alike and were required to approach Ms. Babin and read the words "This is a stickup. Give me your money." After viewing the five participants, Ms. Babin identified in court the defendant as the man who committed the crime.
In his second assignment of error, defendant contends that the court should not have allowed the in-court identification because the prior out-of-court identification was overly suggestive and tainted the in-court identification.
A defendant seeking to suppress an identification has the burden of proving that it was suggestive and that the procedure used created the likelihood of misidentification. State v. Chaney, 423 So.2d 1092 (La. 1982); State v. Pierre, 524 So.2d 1289 (La. App. 3 Cir.1988). In those cases where a pretrial identification is impermissibly suggestive, an in-court identification is admissible when it has an independent basis. State v. Winn, 412 So.2d 1337 (La.1982).
In the instant case, the evidence does not indicate that the out-of-court identification procedure was unduly suggestive. See, Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The trial court found that "the procedure used ... in presenting the photographs to her (Ms. Babin), were in no way suggestive." The court additionally found that the five photographs shown to Ms. Babin were "extremely similar" and that "no one in the room suggested to her or made any comments to her which would assist her in the identification, nor did they pressure her in any way to make an identification." The defendant's picture was never singled out in any way. Ms. Babin could describe the clothes that defendant wore on the night of the offense and testified that she got a good look at his eyesthat she would never forget his eyes. When she viewed the pictures, she stated that she examined the eyes and made the photographic identification of defendant.
The trial court found that the out-of-court identification was not overly suggestive and that it did not taint the in-court identification. After reviewing the record, we find that the trial court did not err in its ruling. For these reasons, we find that defendant's second assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
On or about December 10, 1987, while defendant was incarcerated, the defendant's father and brother went to the Sheriff's Department in order to try to visit the defendant in jail. They met with Major Leeward Credeur of the Lafayette Parish Sheriff's Office, who was a long time personal friend of defendant's family. Major Credeur testified that he has known defendant's father all his life and that he also knew his son, the defendant. Major Credeur received permission to let the two men visit the defendant. Major Credeur, defendant's father and brother went to the correctional center, and they all went together into a small room where visitors are allowed to talk to inmates, who were separated by a glass, by telephone. Major Credeur testified that defendant's father asked his son, "Son, did you really do that?", to which the defendant nodded his head in an affirmative fashion. Major Credeur admits *51 that he did not hear the defendant speak any words, but testified at trial that he saw defendant nod affirmatively in response to his father's question.
In this assignment of error, defendant contends that the trial court erred in allowing the State to introduce the uncertain and unreliable evidence of defendant's nod at trial, particularly because defendant was not represented by counsel during this conversation. The defendant contends that Major Credeur's testimony violated the defendant's Fifth and Sixth Amendment rights to counsel. The defendant argues that Major Credeur, as an agent for the State, intended to relay anything he might have observed or obtained to the appropriate investigating officers. This was the reason Credeur initiated the idea of a meeting between defendant and his father, according to defendant.
The trial judge gave excellent oral reasons in denying defendant's motion to suppress this evidence at trial which we adopt as follows:
"First, on the constitutional issues, the case of Maine versus Moulton, M-o-u-l-t-o-n, found at [474 U.S. 159] 106 Supreme Court 477 [88 L.Ed.2d 481] [(1985)], a United States Supreme Court decision decided in 1985, confirms the Sixth amendment guarantee in favor of an accused, after the initiation of formal charges at least, to have the right to rely on legal counsel as a mediary between him and the State. This guarantee includes an affirmative obligation on the part of the State not to act in a manner that circumvents the protections afforded the accused by the Sixth amendment, who has invoked his right to counsel. This Sixth amendment protection is not violated when by luck, accident, or happenstance, the State obtains incriminating statements from an accused, after the right to counsel has attached. A violation occurs when the State knowingly exploits an opportunity to confront the accused without counsel being present, or of course, when the State intentionally creates such an opportunity. In short, the Sixth amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and any agent of the State. In this case, the record shows that the State, neither created an opportunity to confront the accused without his counsel, nor did it obtain statements from the accused by knowingly circumventing his right to have counsel present in a confrontation between himself and a State agent. The Court has also noted similar holdings in State versus Wascom, W-a-s-c-o-m, a 1988 First Circuit Louisiana Appellate Court decision found at 524 So.2d 1342. [sic] And in State versus Brown, a Louisiana Supreme Court 1983 decision, found at 434 So.2d 399.
* * * * * *
The Fifth Amendment of the United States Constitution provides the accused with the right against self-incrimination. Miranda versus Arizona, and cases following, holds that without proper safeguards, the process of in-custody interrogation of an accused person contains inherently compelling pressures, which work to undermine the accused's will to resist and to compel him to speak, where he would not otherwise do so freely. As a result of the Miranda decision, we now have the familiar procedural safeguards, designed to secure the privilege against self-incrimination.
A 1987 United States Supreme Court Case, Arizona versus Mauro, M-a-u-r-o, found at 107 Supreme Court 1931, confirms that among these safeguards is the rule that when an accused has expressed his desire to deal with the police only through legal counsel, he cannot be subjected to further interrogation by State agents until counsel has been made available to him. Unless the accused, himself, initiates further communication or conversations with the police. The question frequently presented is what police conduct constitutes interrogation, or its functional equivalent. These have been held to include any words or actions on the part of the police that they should *52 know, or reasonably likely to elicit, an incriminating response from the accused.
Turning to the case at hand, the Court finds that here, as in Arizona versus Mauro, the accused was given the warnings required by Miranda, that he had exercised his right not to be questioned without a lawyer present, and that he never waived this right. The record shows that the subject self-inculpatory assertion was not obtained as a result of interrogation or its functional equivalent under the holding of Arizona versus Mauro.

* * * * * *
The defense has argued in his motion that the utterances of the father in asking the question, and the response in the form of a nod, an affirmative nod, for the defendant is not reliable, and therefore, not admissible. Before moving onto [sic] the question of reliability, let the record show that the Court rules, of course, that any utterance or affirmative nod, self-inculpatory assertion of any kind made by the accused, is an exception to the hearsay rule.
On the question of reliability, the record, in this case, does not show any express statements by the accused to reveal his subjective state of mind when he made the self-inculpatory assertion. In the absence of any expressed belief on the part of the accused, that his self-inculpatory assertion would do no harm to him, under the circumstances in which it is given, the Court cannot assume that he had such a belief or state of mind. The Court finds that there is a strong inference of trustworthiness in this case, from the corroborating circumstances which existed at the time of the inculpatory assertion. These circumstances include the fact that the accused knew that he was in custody, he knew that a law enforcement officer was present in the room. The assertion was made in response to a very serious question asked by his father. And the reaction of his father to the response corroborates the seriousness of the question and the response. And a further circumstance is the failure of the accused to make any attempt to clarify or rescind the assertion once he observed the reaction of his father.
For these reasons, the Motion to Suppress the evidence is denied."
We find that the trial court did not err and that defendant's third assignment of error is without merit.

ASSIGNMENTS OF ERROR NUMBERS 4, 5, AND 6
In brief, defense counsel fails to argue or cite any legal authority in support of these assignments of error. Counsel merely restates the assignment of error in one or two sentences in his brief. Failure to argue assignments of error on appeal constitutes a waiver of that assignment. Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3 Cir.1988), writ den., 536 So.2d 1255 (La. 1989). For this reason, these assignments of error are considered abandoned on appeal and will not be considered by this court.
For the foregoing reasons stated, the conviction and sentence of the defendant is affirmed.
AFFIRMED.