575 So.2d 471 (1991)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael MONTGOMERY, Defendant-Appellant.
No. Cr90-470.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
*473 Dean J. Guidry, Lafayette, for defendant-appellant.
Richard Weimer, Wm. Babin, Asst. Dist. Attys., Lafayette, for plaintiff-appellee.
Before FORET, KNOLL and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether the evidence was sufficient to convict defendant of second degree murder; whether the denial of defendant's objections and motions during his trial were reversible error; and whether defendant was denied his constitutional rights.
On November 2, 1988, Michael Montgomery (hereinafter defendant) was charged by grand jury indictment with second degree murder, in violation of La.R.S. 14:30.1. On December 16, 1988, defendant was formally arraigned and entered a plea of not guilty. A jury was selected on August 29, 1989, and a trial was held on August 30 and 31, 1989. On August 31, 1989, the jury found the defendant guilty of second degree murder. Defendant was sentenced by the trial judge on October 9, 1989, to life imprisonment without benefit of probation, parole, or suspension of sentence. The defendant timely appeals urging four assignments of error. We affirm.

FACTS
On September 23, 1988, defendant shot Clifton Brown (hereinafter Brown) outside of the Bone Shaker Lounge in Lafayette, Louisiana. Brown later died as a result of the gunshot wound. Prior to the shooting, defendant and Brown "exchanged words" inside the lounge, but no altercation took place.
Wilbert Brown (hereinafter Wilbert), the victim's brother, testified that he and Brown had two previous run-ins with defendant at the King Center over basketball games. Wilbert was present inside the Bone Shaker Lounge when Brown and defendant engaged in words and a pushing incident. After the incident, Wilbert and Brown discussed what had happened and Wilbert then bought Brown a beer. Brown left the lounge and Brian Montgomery (hereinafter Brian), defendant's brother, and defendant followed him outside.
Dorothy Celestine (hereinafter Celestine) testified that she was outside the lounge that evening and saw defendant's brother, Brian, strike Brown twice with a bat. Celestine stated that Brown did not do anything the first time Brian hit him, but attempted to block the bat with his hands the second time Brian attacked him with the bat. Defendant and Brian then began fighting with Brown. Celestine said that it looked as if Brown was trying to get away from them, but it appeared as if defendant intended to hit Brown in the chest or stomach, when she heard a gunshot and saw Brown fall face down. She saw defendant and his brother, Brian, run into the Bone Shaker Lounge.
Another witness to the shooting, Drusilla Sam (hereinafter Sam), testified that when she walked out of the Bone Shaker Lounge, defendant and Brian were fighting with Brown. Sam stated that Brian hit Brown with a bat and that defendant shot Brown with a small silver gun. Sam saw nothing in Brown's hands.
In a videotaped statement, defendant claimed that he was in the Bone Shaker Lounge when Brown bumped into him, and that the two of them exchanged words, but that they walked away from each other. Defendant alleged that he walked outside about thirty minutes later and approached Brown who was standing on the sidewalk. Defendant claims that Brown hit him in the face and then rushed toward him when he pulled his gun and it went off.
In a dying declaration, which was taped at the hospital, Brown said that it was the defendant who shot him and that it was because of a family rivalry.
After the shooting, Brian and the defendant reentered the Bone Shaker Lounge to *474 confront Wilbert. The defendant was still armed with his pistol, but he and Brian fled after an altercation inside the lounge because they were outnumbered by the people in the lounge. Defendant surrendered himself and his pistol to the police several hours after the shooting. Defendant had purchased his .25 caliber pistol three days before the shooting.
An autopsy was performed on Brown by Dr. Luis Remus. Dr. Remus determined that Brown bled to death from a gunshot wound but found no evidence of trauma to the head area of Brown. Officer William Delahoussaye (hereinafter Delahoussaye) of the Lafayette City Police Department, Crime Scene Division, testified that he recovered two pieces of a bat that had been broken apart, a spent casing and a live round, from a .25 caliber automatic pistol, at the scene of the shooting.
Christopher H. Henderson, a forensic chemist at the Acadiana Crime Lab, testified that the primer on the live .25 caliber round, found at the scene of the shooting by Delahoussaye, had been struck by the firing pin and that the cartridge had been extracted and ejected from defendant's pistol. The spent cartridge was also fired from the defendant's gun and the bullet that killed Brown was fired from defendant's.25 caliber pistol.
On November 2, 1988, defendant was charged by grand jury indictment with second degree murder of Brown, a violation of La.R.S. 14:30.1. Defendant was formally arraigned and entered a plea of not guilty as to the charges against him. A twelve person jury was selected on August 29, 1989, and a trial was held on August 30 and 31, 1989. On August 31, 1989, the jury found the defendant guilty of second degree murder. Defendant was sentenced by the trial judge on October 9, 1989, to life in prison without benefit of probation, parole, or suspension of sentence.
The defendant appeals urging four assignments of error which are:
(1) The weight and sufficiency of the evidence presented at trial was insufficient to convict defendant of second degree murder;
(2) The weight and sufficiency of evidence does not support a conviction of defendant for second degree murder, but, alternatively, was only sufficient to support conviction of defendant for a lesser included offense;
(3) The denial of defendant's objections and motions at trial was reversible error and is incorporated in this assignment of error by reference to the transcript and includes but is not limited to:
(a) The defendant's confession was unconstitutionally obtained and should not have been admitted;
(b) Inadequate foundations were laid for admission of all physical evidence which should not have been admitted;
(c) The denial of defendant's motion for directed verdict was reversible error because the State failed to present a prima facie case on all elements of second degree murder;
(d) The district attorney's leading questions were prejudicial and misleading and created reversible error; and
(e) Other assignments of error appearing from review of the transcript of the trial;
(4) Defendant was denied his constitutionally protected rights to a fair trial, procedural and substantive due process because the trial date, judge, and priority of the trial fixing on the day of the trial were selected by the State with reversible prejudice to defendant.
For the reasons hereinafter set forth, we affirm the defendant's conviction and sentence.

ASSIGNMENTS OF ERROR NUMBERS 1 AND 2[1]
In the first two assignments of error defendant contends that the evidence presented at trial was insufficient to support his conviction of second degree murder *475 or, alternatively, was only sufficient to convict him of a lesser included offense.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State Ex Rel. Graffagnino v. King, 436 So.2d 559, at page 563 (La.1983); State v. Lewis, 560 So.2d 700 (La.App. 3 Cir. 1990).
In order for the State to obtain a conviction, it must prove the essential elements of second degree murder beyond a reasonable doubt. La.R.S. 14:30.1 reads, in pertinent part, as follows:
"A. Second degree murder is the killing of a human being:
(1) when the offender has a specific intent to kill or to inflict great bodily harm ..."
Under this statute, the elements which must be proven beyond a reasonable doubt are the killing of a human being and the specific intent to kill or inflict great bodily harm. Since the defendant raised the defense of justification, the State also has the burden of proving that the killing was not a justifiable act of self-defense. State v. Sylvester, 438 So.2d 1277 (La.App. 3 Cir. 1983), writ den., 444 So.2d 606 (La.1984), citing State v. Brown, 414 So.2d 726 (La. 1982).
The State presented testimony from two people, Sam and Celestine, who witnessed the shooting of Brown by defendant. Moreover, defendant admitted to shooting Brown in his videotaped statement. Also, Brown in his dying declaration named defendant as the person who shot him. Dr. Luis Remus, who performed the autopsy on Brown, testified that Brown died as the result of the gunshot wound from defendant's .25 caliber pistol. This evidence clearly proves that Brown was killed and that defendant was the responsible party. The focus thus shifts to the existence of specific intent of the defendant to kill Brown.
La.R.S. 14:10(1) defines specific intent as follows:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent is a state of mind and need not be proven as fact, but rather it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
Defendant argues that the evidence is not sufficient for a conviction of second degree murder, but that the evidence was only sufficient to convict him of a lesser included offense. After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude beyond a reasonable doubt that defendant had the specific intent to kill or inflict great bodily harm upon Brown when defendant drew his gun and fired at Brown. Thus, we find that there is sufficient evidence for defendant's conviction of second degree murder, rather than a lesser included offense.
Since defendant raised the defense of justification, the State must prove beyond a reasonable doubt that the killing was not a justifiable act of self-defense. Sylvester, supra; Brown, supra. Overwhelming evidence was presented at trial that the killing in the instant case was not a justifiable act of self-defense. La.R.S. 14:20 requires that a person must have a reasonable belief that his life is in danger and that deadly force is necessary to save himself from that danger in order for a homicide to be considered justifiable. Two witnesses testified they saw defendant and his brother approach Brown and begin fighting with him; neither witness testified that Brown was armed with any type of weapon. Christopher H. Henderson, of the Acadiana Crime Lab, testified that, from the physical evidence, when defendant fired *476 his gun he was at a distance of two to five feet from Brown.
It is the role of the factfinder to weigh the credibility of the witnesses and, therefore, the appellate court should not second-guess the credibility determinations of the trier of fact beyond sufficiency evaluations under the Jackson standard of review. See, State Ex Rel. Graffagnino v. King, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983). We find that the State sufficiently carried its burden of proving beyond a reasonable doubt that the killing of Brown was not a justifiable act of self-defense.
After viewing the evidence in its entirety, according to the Jackson standard, it is clear that any rational trier of fact could have found that the elements of second degree murder had been proven beyond a reasonable doubt, that the State had proven beyond a reasonable doubt that the killing was not a justifiable act of self-defense, and convicted defendant of the second degree murder of Brown. Thus, we find that these assignments of error lack merit.

ASSIGNMENTS OF ERROR NUMBERS 3 and 4
Defendant alleges in his third assignment of error that the denial of defense counsel's various objections and motions at trial were reversible error and appears by reference to the transcript and includes but is not limited to:
(a) The defendant's confession was unconstitutionally obtained and should not have been admitted;
(b) Inadequate foundations were laid for admission of all physical evidence which should not have been admitted;
(c) The denial of motion for directed verdict was reversible error because the State failed to present a prima facie case on all elements of second degree murder;
(d) The district attorney's leading questions were prejudicial and misleading and created reversible error; and
(e) Other assignments of error appearing from review of the transcript of the trial;
Defendant contends in his fourth assignment of error that he was denied his constitutionally protected rights to a fair trial, procedural and substantive due process, under the ruling of State v. Simpson, 545 So.2d 1047 (La.1989), rehearing granted, 548 So.2d 1213 (La.1989), amended and clarified, 551 So.2d 1303 (La.1989), in that the trial judge, date of trial, and priority of the trial fixing on the day of the trial were selected by the State with reversible prejudice to defendant.
In brief, defendant fails to argue or cite any legal authority in support of either his third or fourth assignments of error.
The guidelines regarding an appellant's brief are set forth in the Uniform Rules-Courts of Appeal, Rule 2-12.4, which states in pertinent part:
"The brief of the appellant or relator shall set forth ... a succinct syllabus or statement of the principles of law relied upon with the corresponding citations of authority, ... the issues presented for review, an argument confined strictly to the issues of the case ... giving accurate citations of the pages of the record and authorities cited....
* * * * * *
All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed."
Failure to argue assignments of error on appeal constitutes a waiver of that assignment. Bordelon v. Cochrane, 533 So.2d 82 (La.App. 3 Cir.1988), writ den., 536 So.2d 1255 (La.1989). Assignments of error not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La. 1982). Assignments of error three and four were not briefed or argued on appeal and are thus considered abandoned.
Defendant requests that we review the entire record for errors patent. This is always done by the appellate court and we have made such a review in view of all of the assignments of error made by defendant, but abandoned on appeal.
*477 Defendant claims that his confession was unconstitutionally obtained. However, defendant fails to set forth what was unconstitutional about how his statement was obtained. The record shows defendant was advised of his Miranda rights and signed a waiver of rights form. Thus, we find defendant's claim that his confession was obtained unconstitutionally to be without merit.
Defendant claims that inadequate foundations were laid for the admission of all physical evidence. Defendant cites no authority for this contention and is making general allegations. The record shows that, when physical evidence was introduced at trial, testimony from police officers or other State witnesses was given which was sufficient to lay a proper foundation for the introduction of such physical evidence. Thus, we find defendant's claim that there were inadequate foundations for the admission of physical error to be without merit.
Defendant alleges that the trial court erred in denying his motion for a directed verdict. The record shows that before this motion was made, the prosecution had introduced defendant's pistol as the murder weapon, evidence that a shot from defendant's pistol killed Brown, a statement by defendant stating that he shot Brown, a dying declaration by Brown stating that defendant shot him, the testimony of two eye-witnesses who saw defendant shoot Brown, and evidence that the shooting was not in self-defense. We find that the State's case in chief was more than adequate to show a prima facie case of all of the elements of second degree murder beyond a reasonable doubt and, thus, find no merit in this claim of defendant.
Defendant claims that the prosecution's leading questions were prejudicial. Defendant fails in brief to point out any specific instance. After a review of the record we do not find any questions of the prosecutor which unfairly prejudiced defendant and, for this reason, find no merit to this claim of defendant.
Defendant contends that he was denied due process under the Louisiana and the United States Constitutions and State v. Simpson, supra, in that the trial judge, date of trial, and priority of the fixing on the day of trial were selected by the State with reversible prejudice to him. Defendant filed no pre-trial motion to contest the assignment of his case to a trial court judge or contesting the date of its fixing. We take judicial notice that the present court rules of the Fifteenth Judicial District Court, providing for assignment of the cases to the docket of trial judges and the assignment of the dates of trial, have been held to comply with the mandates of the Simpson case. See State v. Simpson, 565 So.2d 427 (La.1990). However, it appears from the record that defendant was tried before the Court Rules of the Fifteenth Judicial District Court were amended. For that reason, we will assume for purpose of argument that this case was assigned and fixed for trial without complying with the mandates of State v. Simpson, 551 So.2d 1303 (La.1989). Simpson held that to meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned or the date on which a particular case is to be tried.
Even when error is committed, if an appellate court finds beyond a reasonable doubt that the error was harmless in light of the totality of the circumstances, defendant's convictions will not be overturned. La.C.Cr.P. Art. 921; State v. Humphrey, 412 So.2d 507 (La.1981). A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La.1984). The defendant must show prejudice before his conviction will be reversed. State v. Sweeney, 443 So.2d 522 (La.1983). See, State v. Romero, 552 So.2d 45 (La.App. 3 Cir.1989), writ den., 559 So.2d 137 (La.1990).
*478 In the present case defendant has failed to show any prejudice. Defendant did not seek to recuse the trial judge, by alleging bias or prejudice, before the trial. Defendant did not allege any bias or prejudice of the trial judge during the trial. We find none by reviewing the record on appeal. Rather, the record reveals that defendant was convicted after a fair trial before an impartial judge and a jury of his peers. The Simpson decision further requires that the criminal docket for a particular day must indicate the order in which cases are to be called for trial. Defendant has also failed to show that he was prejudiced with regard to this requirement of Simpson; hence, defendant's contention is without merit. Therefore, absent any evidence whatsoever of prejudice and in light of the totality of the circumstances of defendant's trial and conviction, we find that any such error was harmless error. For these reasons, this claim of defendant is without merit.
We find, after a careful review of the entire record, no errors patent on the face of the record.
For the reasons assigned, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant's assignments of error numbers 1 and 2 both involve the contention that the evidence introduced at trial was insufficient to support his second degree murder conviction. We will therefore address those assignments of error jointly.