720 So.2d 381 (1998)
STATE of Louisiana
v.
Frank H. COLEMAN.
No. CR96-525.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1998.
Glenn W. Alexander, D.A., for State.
*382 Bryan Forrest Gill, Jr., Lake Charles, for Frank H. Coleman, Jr.
Before THIBODEAUX, COOKS and GREMILLION, JJ.
COOKS, Judge.
Frank H. Coleman appealed his Distribution of "crack" Cocaine conviction, in violation of La. R.S. 40:967 A(1). We reversed defendant's conviction on original appeal finding his constitutional right to confront the witness against him required the State to disclose the identity of a confidential informant. State v. Coleman, 96-525, p.7 (La. App. 3 Cir. 10/8/96); 702 So.2d 803, 806. However, the Louisiana Supreme Court disagreed with our holding on this issue and remanded the case instructing us to consider the remaining errors assigned by defendant. State v. Coleman, 97-2802 (La.4/24/98); 713 So.2d 440. For the following reasons, we must affirm defendant's conviction, but vacate his sentence and remand for resentencing.

FACTS
On September 23, 1994, the Cameron Parish Sheriff's Department conducted an undercover narcotics "sting" at the Warren Miller Subdivision in Cameron Parish. The operation's supervisor was Deputy Michael Hebert, who on that particular evening worked with two agents, including Garfield Baker of Texas (hereinafter referred to as "Agent 31.")[1] The other agent, known to defendant only as "Confidential Informant # 106" (CI-106), provided certain information Agent 31 used to make the narcotics purchase. Particularly, CI-106 informed the deputies that he knew where to buy drugs and agreed to lead them to the location.
Deputy Steven Cheramie of the Cameron Parish Sheriff's Department and Deputy Hebert met Agent 31 and CI-106 around 10:00 that evening, placed a transmitter on Agent 31, and parked their unit less than half a mile from where the alleged drug transaction subsequently took place. Agent 31 was given $50.00 to purchase narcotics. The deputies then watched as Agent 31 and CI-106 drove another vehicle into the Warren Miller Subdivision intending to buy drugs.
The vehicle containing the undercover agents pulled up to a trailer home allegedly known for drug trafficking, where they met Leroy Moore, Jr. At this point, deputies Cheramie and Hebert were unable to see the agents and Moore. However, they continued to monitor the agents' activities via listening devices.
Whether Baker alone or CI-106 and Baker together expressed to Moore a desire to buy a "50" is a point in dispute.[2] The record does establish, however, only CI-106 and Moore were familiar with each other. Asked what happened when he first approached the car in which Baker and CI-106 were sitting, Moore testified CI-106 asked for defendant by name. Baker subsequently handed Moore $50.00. Moore apparently left, obtained $50.00 worth of "crack" cocaine, and returned to the vehicle. Deputies Cheramie and Hebert then met Agent 31 and CI-106 at another location, and received the evidence (one rock of crack cocaine).
Frank H. Coleman was subsequently indicted on five (5) counts of distributing cocaine in violation of La.R.S. 40:967(A)(1). One count stemmed from the occurrences on September 23,1994. On September 28,1995, the trial court denied defendant's Motion to Reveal the Identity of the Confidential Informant. Defendant maintained CI-106 was a participant and became a principal in the drug buy. The State argued the purchase of the crack cocaine was via Agent 31 or, in the alternative, through Moore and CI-106's identity was, thus, privileged. The motion was re-urged and again denied on October 12, 1995. The trial court also refused defendant's request to order the State to disclose which five charges pending against him it intended to try during the week beginning October 16, 1995. A jury convicted defendant as charged. His Motions for New Trial *383 and Post-Verdict Judgment of Acquittal also were denied. On original appeal to this court, defendant assigned the following errors for our review:
1. The trial court erred in denying the defendant's Motion to Reveal the Identity of CI-106 where it was stipulated that the confidential informant was involved in the drug transaction for which the defendant was convicted.
2. The trial court erred in denying defendant's Motion for New Trial where CI-106 testified he could not identify the defendant on the night of the transaction.
3. The trial court erred in denying defendant's request to order the State to disclose the preference of the case it intended to try where defendant was scheduled for trial on five separate charges.
4. The trial court erred in failing to grant defendant's Motion for Post Verdict Judgment of Acquittal.
As mentioned, we reversed defendant's conviction finding his first assignment attacking the trial court's denial of his motion to disclose the identity of CI-106 was meritorious. Specifically we stated, in pertinent part, "where evidence provided by an informant is so vital to the State's indictment as to render the charges inconsequential without it, disclosure of the informant's identity is necessary to protect the defendant's right to confrontation." Coleman, 702 So.2d at 806. The Louisiana Supreme Court disagreed and found "no error in the trial court's denial of the defendant's motion." Coleman, 713 So.2d at 442. As instructed, we turn to address defendant's remaining assignments of error.

ASSIGNMENT OF ERROR NO. 2
By this assignment, defendant claims the trial court erred in denying his Motion for New Trial. At a hearing on the motion, defendant presented the testimony of CI-106 who stated he could not identify the defendant on the night of the transaction. This evidence, defendant contends, was critical to his defense; and, he alleges the state did not call the informant as a trial witness because it knew his testimony would hurt the state's case. Defendant argues the confidential informant's testimony sufficiently supported his request for a new trial, particularly considering his repeated pleas for disclosure of the informant's identity prior to trial.
In State v. Guidry, 94-678, p. 9 (La.App. 3 Cir. 12/7/94); 647 So.2d 502, 508-09, this court articulated the standard for reviewing motions for new trial:
LSA-C.Cr.P. Art. 851 provides in part:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;"
As stated in State v. Prudholm, 446 So.2d 729 (La.1984), LSA-C.Cr.P. Art. 854 establishes four requisites for a new trial motion based on newly discovered evidence: (1) the evidence must have been discovered since the trial; (2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; (3) it must be material to the issues at the trial; and (4) it must be of such a nature that it would probably produce an acquittal in the event of retrial.
The trial court's application of these precepts to newly discovered evidence is entitled to great weight, and its denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Clayton, 427 So.2d 827 (La.1982).
* * * * * *
In the evaluation of whether the newly discovered evidence warrants a new trial, the test employed is not simply *384 whether another jury might return a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981).
Defense counsel became aware of the confidential informant's identity during the merit-trial testimony of Leroy Moore, Jr. The minutes also reflect the state requested a bench warrant for the arrest of Leon Allen, the informant, for failure to appear as a witness, and the trial court so ordered. Nevertheless, defendant contends Allen's testimony was not discoverable before trial; and, he did not have sufficient time or opportunity to secure his testimony during trial. Countering, the State argues even if Allen's testimony was not discoverable prior to or during trial, through no fault of defendant, and it was relevant; nonetheless, Allen's testimony was not so material as to produce a verdict different from that rendered at trial.
At the hearing, before Allen answered any questions surrounding the incident in question, he told the court he was suffering from HIV and was losing his mind at times. Allen also informed the court that he had taken medicine earlier that morning and it affected his thinking at times. Allen admitted he did not remember a lot of things but would tell the court what he did remember. He recalled riding in the car with Baker to Frank Miller's Trailer Park on September 23, 1994, and remembered seeing Leroy, Jr. at the trailer that night; but he could not see anything else because "it was pitch black." Allen stated he did not see the defendant in the yard on the night in question.
On cross-examination, Allen was asked if he had been threatened by anyone about testifying. He responded that he had been threatened, but he did not say by whom. Allen stated he was present when Leroy Moore, Jr. handed drugs to Baker but he did not see the defendant "pay nobody no drugs." The following colloquy then took place:
Q: I understand that. I'm not asking you if you saw Frank pass anybody any drugs. I'm asking you if you saw Leroy Moore, Jr. walk over to a car where Frank Coleman was sitting that night?
A: I didn't even see Frank doI told you I went knocked on the door. This old lady answered the door. I tried toI told GarfieldPoogy-boy came to the car and got the money and went and got the drugs.
Q: Where did he go get the drugs?
A: Well, I guess he got them from Frankhis wife.
Q: Frank Coleman was in a car that night at that location, wasn't he?
A: I don't know.
Q: Now, I'm going to ask you to think.
A: A Car?
Q: Didn't you just tell me outside that you saw Poogy-boyLeroy Moore, Jr.
A: Walking around the back of the house.
Q: You told me you saw Frank Coleman. You told me you didn't see Frank hand him any drugs but you said you saw Frank Coleman. Is that what you told me?
A: I said I knocked on the door. I heard FrankI don't know if I seen him or not. I told you it was pitch black out there. They didn't have the lights on in the yardmatter of fact, I don't even think the lights was on....
Q: Was Frank Coleman at that location that night?
A: I told you I saw him earlier.
* * * * * *
A: I heard him. He was in the house.
Although parts of Allen's testimony conflict with the testimony of Garfield Baker and Leroy Moore, Jr., we cannot say his testimony ought or necessarily would have produced a verdict different from that rendered by the jury. True, Allen's testimony regarding the lighting in the area of the drug transaction differed from Garfield Baker's and he did not recall seeing Coleman because "it was pitch black out;" but he confirmed that he "heard him. He was in the house." Allen's testimony placed defendant in the general area of the drug transaction. While the jury might have rendered a different verdict if Allen had testified, his admission that he had been threatened and was not able to remember a lot of things, also might have weakened the *385 strength of his testimony and dampened his credibility in the minds of the jurors. We simply cannot say a jury would have accepted Allen's equivocal contradictory statements and acquitted defendant; though it heard the otherwise credible testimony of Garfield Baker and Leroy Moore, Jr., both of whom not only placed defendant at the scene of the crime but related additional facts sufficient to establish his guilt.

ASSIGNMENT OF ERROR NO. 3
Defendant urges the trial court erred when it denied his motion seeking to compel the state to disclose which of the five pending charges against him it intended to try during the week beginning October 16, 1995. At a hearing held on October 12, 1995, defense counsel argued:
I still do not know which of the five cases that potentially it would be tried on Monday. Next week will be a call by the district attorney. It puts me at a disadvantage. I do not have time to prepare for the C.I.'s testimony in the event that they reveal the day of the trial. In light of State v. Jackson I cited in my memorandum I would like to re-enter that motion.
The trial court denied the request, finding the district attorney had no obligation to disclose which charge he intended to try until the morning of trial. In brief, defendant cites State v. Kimmel, 571 So.2d 208 (La.App. 3 Cir.1990) and State v. Simpson, 551 So.2d 1303 (La.1989), in support of his argument. In State v. Montgomery, 575 So.2d 471, 477 (La.App. 3 Cir.1991), this court restated the supreme court's holding in Simpson as follows:
[To] meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court which does not vest the district attorney with power to choose the judge to whom a particular case is assigned or the date on which a particular case is to be tried.
The Simpson allotment requirement was not violated in this case. Cameron Parish has only one district judge; thus, the district attorney does not possess the power to choose a different judge.
But the supreme court also stated in Simpson "[s]ince adequate notice is a fundamental element of due process, (citation omitted), the criminal docket for a particular day must indicate the order in which cases are to be called for trial." Simpson, 551 So.2d at 1305 (citation omitted). Rule III, Section 2 of the 38th Judicial District Local Rules of Court mandates, as well, "[w]hen two or more cases are fixed for the same day, the District Attorney will determine the order of cases called for trial unless just cause exists for the court to alter the order." The criminal docket at issue did not set forth the order in which defendant's charges would be tried on October 16, 1995. The state acknowledges, in brief, it "did not inform the court nor the defendant which of the five felony counts it would call for trial until the actual day of trial." Simpson requires us to hold defendant did not receive adequate notice of the particular case the state intended to call for trial on the date in question. Though defendant was denied this fundamental right, our inquiry does not end here. In Montgomery, 575 So.2d at 477, we said even when a Simpson violation occurs:
[I]f an appellate court finds beyond a reasonable doubt that the error was harmless in light of the totality of the circumstances, defendant's convictions will not be overturned. La.C.Cr.P. Art. 921; State v. Humphrey, 412 So.2d 507 (La.1981). A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La.1984). The defendant must show prejudice before his conviction will be reversed. State v. Sweeney, 443 So.2d 522 (La.1983). See, State v. Romero, 552 So.2d 45 (La.App. 3 Cir.1989), writ den., 559 So.2d 137 (La.1990). (Emphasis added)
To show specific prejudice, defendant first argues he was disadvantaged because he was forced to prepare for five trials, each involving separate drug transactions or offenses. Defense counsel states he was not *386 able to adequately prepare for "whatever" case the district attorney decided to select for trial. However, defense counsel has not shown what evidence he would have introduced had he known which case would be called for trial. No specific instances of prejudice have been cited by him. Counsel does not assert the strain of preparing for five different cases on the same date so debilitated him either mentally or physically that he was not able to render effective or meaningful assistance to his client. While counsel asserted the state's failure to identify the case it intended to try would have prevented him from preparing for the confidential informant testimony if the state had called this witness to testify, the supreme court held the state was not compelled to disclose the CI's identity; thus, we are prevented from revisiting this issue. Defendant simply has not shown that he was prejudiced by the state's failure to announce its selection earlier than the day of trial.

ASSIGNMENT OF ERROR NO. 4
Finally, defendant claims the trial court erred when it denied his Motion for Post Verdict Judgment of Acquittal. Specifically, he argues the evidence did not reasonably permit a finding of guilt even when viewing it in a light most favorable to the state. He asserts the only witnesses who stated he distributed drugs on the night in question were not credible.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La. 1983); State v. Duncan, 420 So.2d 1105 (La. 1982); State v. Moody, 393 So.2d 1212 (La. 1981). It is the role of the fact-finder to weigh the respective credibility of the witness, and therefore the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559.
To obtain a conviction, the state must prove the elements of the crime beyond a reasonable doubt. Defendant was convicted of distribution of cocaine, a violation of La. R.S. 40:967(A). The statute provides, in pertinent part, that it shall be unlawful for any person to knowingly or intentionally:
produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled substance classified in Schedule II.
We find the evidence in the record did support the jury's verdict.
Leroy Moore testified he was present on the night in question; and, he had been riding around drinking with the defendant and others. When they returned home, Moore stated he heard the agents ask for a fifty, which he interpreted as drugs. Moore told the defendant what the agents wanted and defendant told Moore to get the money first. After Moore obtained the money and gave it to defendant, he gave Moore the rocks of cocaine. Moore identified the defendant in court as Frank Coleman; and, stated Coleman was the same man who handed him the cocaine on the night in question. On cross-examination, Moore admitted, in addition to drinking on the day in question, he also smoked marijuana and probably smoked crack cocaine.
Undercover officer Garfield Baker identified defendant as the individual who received the money and handed the crack cocaine to Leroy Moore. According to Baker the transaction took place at around 11:00 at night. When asked about the lighting conditions, Baker testified it was dark "but there was a big light that was on the telephone pole and it wasit was enough for me to see both subjects that I needed to see."
Defendant does not dispute that the above testimony was sufficient to support the jury's verdict. Instead, he argues this testimony was not credible. Defendant also claims Moore lied on the stand about having conversations with the district attorney about the case prior to trial. As for Baker's testimony, defendant argues Baker testified the crime *387 scene was well lit when the only illumination was approximately 100 yards away. Furthermore, Leon Allen testified the trailer park was pitch black on the night in question. Defendant also questions the fact that Baker positively identified defendant as the person distributing the cocaine to Moore; but he could not verify the clothing worn by defendant, how the drugs were handled or the color of the cocaine.
The jury was aware of Leroy Moore's prior criminal history and the agreement he had with the district attorney's office that his distribution of cocaine charge would be dropped if he testified truthfully. The jury also heard defense counsel as well as the prosecution question Moore about his conversations with the district attorney prior to trial. When questioned by defense counsel about any prior discussions with the district attorney, Moore stated he did not have any. However, when questioned by the prosecution he admitted to talking with the district attorney about a plea arrangement in return for his testimony. It is not clear whether Moore was intentionally lying to defense counsel about his prior conversations with the district attorney or was confused by the questioning. In any event, the jury heard Moore's testimony in its entirety, and was able to make a credibility determination.
As for Baker's testimony regarding the lighting, a photograph of the light pole in the trailer park was taken after the previous day's testimony and circulated to the jury at the request of the defense. Thus the jury was able to see the location of the light pole and compare it to Baker's testimony. The jury also heard Deputy Michael Hebert testify that although there is at least one light in the trailer park, it is a fairly dark park. Lastly, the jury was made aware of Baker's inability to remember what defendant was wearing and the color and size of the cocaine at issue. After hearing the above evidence, the jury apparently chose to believe the testimony of Moore and Baker since they found defendant guilty as charged. It is well settled that this court may not second guess the credibility determinations of the jury. State ex rel. Graffagnino, 436 So.2d at 563, citing State v. Richardson, 425 So.2d 1228 (La. 1983).

ERRORS PATENT
A review of the record reveals one error patent. At his arraignment, defendant denied the habitual offender charge. However, at the habitual offender proceeding held on December 14,1995, defendant admitted to his status as a habitual offender. No other proof of defendant's habitual offender status was presented. The court did not inform defendant of his right to remain silent or to have the state prove its case before defendant entered his admission. The court stated to defendant, "[r]ather than [having] a hearing on habitual offender, you admit to being a habitual offender ..." This statement is not sufficient to constitute an advice as to defendant's right to a hearing. Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in State v. Johnson, 432 So.2d 815 (La.1983), writ granted on other grounds, 438 So.2d 1113 (La.1983); appeal after remand, 457 So.2d 1251 (La.App. 1 Cir.1984), appeal after remand, 471 So.2d 1041 (La.App. 1 Cir.1985), the Louisiana Supreme Court held this statute clearly recognizes the defendant has the right to remain silent, and the statute implicitly provided defendant should be advised by the court of his right to remain silent. The court in Johnson, relying on State v. Martin, 427 So.2d 1182 (La.1983), further stated La.R.S. 15:529.1(D) specifically provides defendant shall be advised of his right to a formal hearing and to demand that the state prove its case. This court has held "where a defendant was not advised of his right to remain silent before admitting his prior convictions at a habitual offender hearing, defendant's acknowledgment is insufficient where the acknowledgment is the only proof of prior convictions offered by the state." State v. Payne, 94-1628, p.4 (La.App. 3 Cir. 12/6/95); 665 So.2d 158, citing State v. Norris, 94-1064 (La.App. 3 Cir. 3/1/95); 651 So.2d 490 and State v. Gautreaux, 607 So.2d 1086 (La.App. 3 Cir.1992). Since the defendant in the present case was not informed of his right to remain silent or his right to have the state prove its case before he admitted to *388 being a habitual offender, defendant's admission is invalid.
We note the supreme court's decision in State v. Harris, 95-0900 (La.5/19/95); 654 So.2d 680, which found that the habitual offender hearing at issue was fundamentally fair even though the defendant was not informed of his rights. Harris was distinguished in a decision rendered by this court in State v. Roberson, 94-1570 (La.App. 3 Cir. 11/2/95); 664 So.2d 687. This court stated:
This case can be distinguished from a recent Louisiana Supreme Court case, State v. Harris .... In that case, the court said that, where the state has presented evidence that the defendant is the same person previously convicted of the predicate felonies that led to the multiple bill, the hearing is fundamentally fair, even if the defendant is not advised of his rights before admitting to his identity. In this case, no evidence, except the testimony of the defendant himself, was presented to show that a Ray Roberson was convicted of any prior offenses. No independent evidence or testimony was introduced to prove the defendant's identity. Because no competent evidence was introduced against the defendant, and because he was not specifically informed of his right to remain silent before his admission, the defendant was denied a fundamentally fair hearing. Accordingly, the defendant's sentence is vacated and the case remanded for a new habitual offender hearing and resentencing.
Id. at 690.
This case is also distinguishable from Harris since no proof other than defendant's admission was offered to prove his status as a habitual offender. Accordingly, the defendant's sentence is vacated and the case remanded for a new habitual offender hearing and resentencing.

DECREE
The defendant's conviction is affirmed. However, because of the failure of the trial court to advise the defendant of his right to remain silent prior to his admission of guilt in the multiple offender bill, his sentence is vacated. The case is remanded for a new habitual offender hearing and resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] Garfield Baker was an undercover agent from Texas employed by the Cameron Parish Sheriff's Department to perfect certain drug buys.
[2] A "50" is a slang used in the drug trade to express a desire to purchase $50.00 worth of crack cocaine.