819 So.2d 443 (2002)
STATE of Louisiana
v.
Terry Charles PRUDHOMME.
No. 99-2029.
Court of Appeal of Louisiana, Third Circuit.
June 5, 2002.
*446 Jimmy D. Long, Assistant District Attorney, Natchitoches, LA, for the Appellee State of Louisiana.
Paula C. Marx, Louisiana Appellate Project, Lafayette, LA, for the Defendant/Appellant.
Terry C. Prudhomme, La. State Penitentiary, Angola, LA, Appearing pro se.
Court composed of NED E. DOUCET, JR., Chief Judge, JOHN D. SAUNDERS and OSWALD A. DECUIR, Judges.
DOUCET, Chief Judge.
The Defendant, Terry Charles Prudhomme, seeks review of his 1981 conviction for second degree murder.
Lillian Revels was the Defendant's girlfriend. They had lived together and had a child, but at the time of the incident, they were separated. On January 7, 1980, Ms. Revels went to babysitter Clara Tonnas's house to pick up her baby. Ms. Revels put the baby in the front seat of her car. Ms. Tonnas was standing nearby. Ms. Tonnas saw the Defendant exit the passenger side of another car and run across the street with a gun in his hand. He jumped on the hood of the car and shot Ms. Revels. The Defendant then jumped off and "went across Robeline Road across the old McBride place." According to Dr. Carol Pierce, the victim sustained five gunshot wounds, the two to her head causing death.
The Defendant was indicted for second degree murder. Pursuant to the Defendant's application, a sanity commission was appointed. At the sanity hearing, Prudhomme was found capable of assisting in his own defense. At trial, the Defendant presented evidence that Prudhomme had used drugs and consumed alcoholic beverages prior to the incident. However, the jury convicted him of second degree murder. He was sentenced on March 2, 1981, to life in prison at hard labor without the benefit of probation, parole or suspension of sentence. The Louisiana Supreme Court affirmed the conviction. See State v. Prudhomme, 412 So.2d 107 (La.1982). However, the supreme court ordered that Prudhomme be granted an out of time appeal in 1993. The case is currently before us on that out of time appeal.
The Defendant has raised seven assignments of error, as follows:
1. The reasonable doubt instruction given at Terry Charles Prudhomme's trial allowed a finding of guilt based on a degree of proof below that required by the due process clause.
2. The trial court erred in allowing the use of polygraph testing by the sanity commission to determine capacity to proceed.
3. The appointment of the coroner to the sanity commission constitutes reversible error in this case.
4. Despite the court's order, the sanity commission failed to determine Terry Charles' mental capacity at the time of the offense.

*447 5. The transfer of this case to a different division during the pendency of the sanity commission violates the laws of Louisiana and the United States.
6. The Defendant was denied his right to a fair trial as a result of improper comments by the court and the prosecutor.
7. The conviction in this case should be vacated due to ineffective assistance of counsel. The deficiencies in counsel's representation of Prudhomme are of such a degree as to undermine confidence in the outcome of the case.

INEFFECTIVE ASSISTANCE OF COUNSEL
The Defendant claims he received ineffective assistance of counsel at all stages of his trial. Ineffective assistance of counsel claims are usually addressed in post-conviction proceedings, rather than on direct appeal. These issues may be addressed on appeal where the evidence needed to decide the issue can be found in the record. In this case, however, the arguments of ineffective assistance of counsel rest primarily on matters which cannot be effectively addressed on the record before us. The Defendant asserts numerous ineffective assistance of counsel claims. Although the record provides sufficient evidence to resolve some of those claims on appeal, it is not adequate to resolve all of the Defendant's claims. See State v. Deruise, 98-0541 (La.4/3/01); 802 So.2d 1224, cert denied, ___ U.S. ___, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). Therefore, in spite of the very lengthy time since the conviction is this case, all the claims that Defendant was deprived of effective assistance of counsel will be relegated to post-conviction relief.

JURY INSTRUCTION
Prudhomme asserts that the trial court gave the jury an incorrect instruction with regard to the definition of reasonable doubt, thereby violating the requirements of Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The question arises whether Cage should be applied to this conviction, which predates it, and as to the effect of the failure of trial counsel to object to the instruction. However, we will not consider these questions because we find that the instruction does not violate the principals set forth by the U.S. Supreme Court. The trial court gave the following jury instruction with regard to reasonable doubt:
The State however is not required to prove this with an absolute certainty. It is sufficient if the State shall prove the defendant's guilt beyond a reasonable doubt. A reasonable doubt must be actual and substantial as distinguished from a vague apprehension and must arise from the evidence or from lack of evidence. It is a doubt founded on reason and not a mere conjecture and idle supposition unrelated to the evidence. In short, a reasonable doubt is such a doubt that reasonable men may entertain after a careful consideration of all things proper to be considered in the matter at hand.
The instruction at issue in the present case does not contain the "moral certainty" and "grave uncertainty" language found improper in Cage. However, the Defendant claims that the instruction given in the present case includes "the suspect phrase, `actual and substantial' and also interjects language which would allow a juror to find guilt on an unconstitutionally lesser degree of proof." The Defendant argues that "actual and substantial doubt" language used in the instruction at issue is distinguishable from the language found *448 permissible in Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
In Victor, the Supreme Court explained that the "proper inquiry is not whether the instruction `could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury did so apply it." Victor v. Nebraska, 511 U.S. at 2, 114 S.Ct. at 1243 citing Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Victor argued that "equating a reasonable doubt with a `substantial doubt' overstated the degree of doubt necessary for acquittal." Victor, 114 S.Ct. at 1250. Although it found the phrase was "somewhat problematic," the Court found that "[a]ny ambiguity... is removed by reading the phrase in the context of the sentence in which it appears: `A reasonable doubt is an actual and substantial doubt ... as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture'." Id., 114 S.Ct. at 1250. The Court further stated that:
This explicit distinction between a substantial doubt and a fanciful conjecture was not present in the Cage instruction. We did say in that case that `the words `substantial' and `grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.' [citation omitted]. But we did not hold that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional. [citation omitted].... Rather, we were concerned that the jury would interpret the term `substantial doubt' in parallel with the preceding reference to `grave uncertainty,' leading to an overstatement of the doubt necessary to acquit. In the instruction given in Victor's case, the context makes clear that `substantial' is used in the sense of existence rather than magnitude of the doubt, so the same concern is not present.
Id., 114 S.Ct. at 1250.
The instructions given in the present case do not contain the terms "grave uncertainty" or "moral uncertainty." Therefore, this court need not be concerned, as the Court was in Cage, with the possibility that the jury interpreted "actual and substantial doubt," as used in this case, in light of those terms. Like the instructions given in Victor, the instructions given in this case contain qualifying language. In Victor, the instructions read, "A reasonable doubt is an actual and substantial doubt ... as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture." Id., 114 S.Ct. at 1255. In the present case, the instruction read, "A reasonable doubt must be actual and substantial as distinguished from a vague apprehension and must arise from the evidence or from lack of evidence." Although the qualifying term is different in this case, the term used here also removes any misconception the jury might receive from the terms "actual and substantial doubt."
The Court in Victor also noted that the instruction at issue in that case provided an alternative definition of reasonable doubt: "a doubt that would cause a reasonable person to hesitate to act." Id., 114 S.Ct. at 1242. The instruction at issue in the present case also contains an alternative definition of reasonable doubt: "a doubt founded on reason and not a mere conjecture and idle supposition unrelated to the evidence." The court in the present case further stated, "In short, a reasonable doubt is such a doubt that reasonable men may entertain after a careful consideration of all things proper to be considered in the matter at hand." Although the alternative definitions given in the present case are different from that given in Victor, the *449 alternative definition given in this case also "gives a common sense benchmark for just how substantial such a doubt must be." Id.
Prudhomme also seems to be arguing that the instructions given not only used prohibited language but were also confusing. However, after reviewing the record, this court concludes that Prudhomme has not shown that the instructions given confused the jury to such an extent that it is reasonably likely that the jury applied the wrong standard in convicting the Defendant. Considering the instruction as a whole, the Defendant has not shown that there is a reasonable likelihood that the jury applied the wrong standard in convicting him.

POLYGRAPH TESTING
Prudhomme next asserts that the trial court erred in allowing the sanity commission to use a polygraph test in determining his capacity to proceed. Both Drs. Cook and Thomas, members of the sanity commission, submitted reports to the court in May 1980 in which they suggested that a polygraph examination would help them determine whether the Defendant was really unable to remember certain things or was lying about this. Both doctors felt that a polygraph test would help them determine Prudhomme's capacity to proceed. At the contradictory sanity hearing held in December 1980, Dr. Cook testified that, after his interview with the Defendant, he could not decide whether Prudhomme was seriously mentally ill, emotionally disturbed or intentionally not answering questions the answers to which he should have known. Dr. Cook opined that a polygraph test would help decide this question. Counsel for the Defendant made the following statement with regard to the polygraph test:
... I haven't talked with Mr. Prudhomme about it but I think it would be beneficial if we could have the man, you know, subjected to this test of this nature. I think that I would like to ... personally as his lawyer like to see the questions and (inaudible), you know. I think this is a ... different area we're getting into about the question of a polygraph being used in court because it's not being used to determine innocence or guilt but it's being used as a tool in aid of a psychological or psychiatric evaluation....
The court ordered the polygraph examination and ordered that Counsel for the Defendant be informed of the date and place of the examination. Far from objecting to the examination, it appears that counsel for the Defendant acquiesced in or even requested the examination. Further, counsel for the Defendant did not object to the use of the polygraph examination in Dr. Cook's determination of competency. On appeal, the Defendant argues that the inclusion of the hearsay statements of the polygraph examiner in Dr. Cook's report denied the Defendant his "right to confrontation of this witness whose opinion formed the basis of the competency finding." No objection was made to the inclusion of statements in the report nor does the record reflect that any request was made to question the polygraph examiner at a contradictory hearing. Therefore, we will not consider this assignment of error.

APPOINTMENT OF THE CORONER TO THE SANITY COMMISSION
Prudhomme next claims that the appointment of the coroner to the sanity commission constitutes reversible error. However, there is nothing in the record to show that the Defendant objected to the appointment of Dr. Cook to the sanity commission. Therefore, we will not consider this assignment of error.

*450 FAILURE OF SANITY COMMISSION TO DETERMINE MENTAL CAPACITY AT TIME OF OFFENSE
The Defendant claims that although the trial court ordered it to do so, the sanity commission failed to determine the Defendant's mental capacity at the time the offense was committed. When the Defendant requested the sanity commission, he alleged that there was good reason to believe that he did not have the requisite mental capacity to commit the offense. In addition to determining his capacity to proceed to trial, the Defendant requested the doctors also determine his mental condition at the time of the offense. When the trial court ordered the appointment of the sanity commission, it ordered the doctors to examine the Defendant as to his mental capacity at the time of the offense. Because the Defendant had not entered a plea of not guilty and not guilty by reason of insanity, the trial court exceeded its authority in so doing. See La.Code Crim.P. art 650 and State v. Chinn, 229 La. 984, 87 So.2d 315 (1955). However, we need not consider this argument because the record indicates that no objection was made to the failure of the sanity commission to make this determination.

TRANSFER OF CASE
The Defendant claims the transfer of the case to a different division during the pendency of the sanity commission was error. The Defendant notes that "for no apparent reason," his case was transferred to Division B on October 24, 1980. The Defendant claims that this transfer violated the requirement of random allotment of cases set forth in State v. Simpson, 551 So.2d 1303 (La.1989) and State v. Rideau, 01-3146 (La.11/29/01); 802 So.2d 1280. When the supreme court rendered its decision in Simpson, it stated, "As to the Simpson case, which counsel informed the court is not yet assigned, it is to be assigned in accordance with this order which is prospective only." Simpson, 551 So.2d at 1305 (emphasis added). In a subsequent case, State v. Trahan, 576 So.2d 1 (La.1990), the supreme court refused to apply Simpson retroactively even to a case that was on direct review when Simpson was rendered. The court in Trahan stated:
Defendant presents no compelling rationale as to why we should supplant this clear pronouncement and give our order retroactive effect. He makes no showing of particularized prejudice arising out of the former system. As the court of appeal noted, defendant was free to bring a motion to recuse Judge Mouton if he felt the judge was unable to conduct a fair and impartial trial. Defendant did not do so.
Id. at 5.
Likewise, the Defendant in the present case has made no argument justifying a retroactive application of Simpson. In light of these cases, we find that Simpson does not apply here.
Additionally, Defendant offers no evidence that the transfer procedure used in the present case would have violated Simpson. Nor does the Defendant offer any evidence to show that he was prejudiced by the allegedly improper transfer. In State v. Montgomery, 575 So.2d 471, 477-478 (La.App. 3 Cir.1991), this court, in addressing an alleged Simpson violation, applied the harmless error analysis and stated the following:
Even when error is committed, if an appellate court finds beyond a reasonable doubt that the error was harmless in light of the totality of the circumstances, defendant's convictions will not be overturned. La.C.Cr.P. Art. 921; *451 State v. Humphrey, 412 So.2d 507 (La. 1981). A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La.1984). The defendant must show prejudice before his conviction will be reversed. State v. Sweeney, 443 So.2d 522 (La. 1983). See, State v. Romero, 552 So.2d 45 (La.App. 3 Cir.1989), writ den., 559 So.2d 137 (La.1990).
In the present case defendant has failed to show any prejudice. Defendant did not seek to recuse the trial judge, by alleging bias or prejudice, before the trial. Defendant did not allege any bias or prejudice of the trial judge during the trial. We find none by reviewing the record on appeal. Rather, the record reveals that defendant was convicted after a fair trial before an impartial judge and a jury of his peers.... Therefore, absent any evidence whatsoever of prejudice and in light of the totality of the circumstances of defendant's trial and conviction, we find that any such error was harmless error. For these reasons, this claim of defendant is without merit.
In the present case, the Defendant offers no showing that he sought to recuse the trial judge by alleging bias or prejudice. Additionally, the Defendant offers no evidence on appeal that the trial judge in the present case was biased or prejudiced.
The Defendant also claims the transfer of the case to Division B was erroneous since a sanity commission was pending. The trial court appointed a sanity commission on April 17, 1980. The transfer of the case occurred on September 23, 1980, and a determination of the Defendant's competency was made on January 16, 1981. La. Code Crim.P. art. 642 provides that "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." We can find no jurisprudence indicating whether or not the transfer of a case from one division to another is a further step in the criminal prosecution. Even if it was, any error was harmless. No objection was made to the transfer by defense counsel and no objection was made to the judge to whom the case was transferred. On appeal, the Defendant does not allege how he was prejudiced by the transfer of the case during the pendency of his sanity commission. State v. Charles, 450 So.2d 1287 (La.1984) and State v. Davis, 94-2332 (La. App. 1 Cir. 12/15/95); 666 So.2d 400, writ denied, 96-0127 (La.4/19/96); 671 So.2d 925.

COMMENTS BY COURT AND PROSECUTOR
The Defendant claims that he was denied his right to a fair trial as a result of improper comments made by the court and the Prosecutor. We will consider each statement individually.
The Defendant first complains of the following statement and emphasizes the italicized portion:
THE COURT: The jury is instructed that the witness Raymond Cooper is a qualified expert in the identification of bullets or ballistics tests to determine if a certain bullet was fired from a particular weapon. And the jury can consider that as a fact in their deliberations." (Emphasis added).
No objection was made to the statement by defense counsel. Additionally, the Defendant has not shown that the statement was erroneous or that he was prejudiced by the statement.
*452 The Defendant next complains of the following comments by the prosecution:
THE STATE: And also, when you're in the jury room just remember that it could have been your sister, your mother or your wife.

* * *
[DEFENSE COUNSEL]: I ask that the jury be instructed to disregard those type arguments, your Honor.
THE COURT: Well, just as a precautionary matter I so order and the jury is to ignore any questions of relationship to others or their relations involved in this matter. (Emphasis added).
Defense counsel objected to the italicized statement and requested that the jury be instructed to disregard the statement. The trial court instructed the jury as requested. The Defendant does not allege in brief that the admonition was insufficient nor does he allege that his counsel should have requested a mistrial. Finally, the Defendant asserts no allegation or proof that he was prejudiced by either the remark or the admonition.
The Defendant next claims that the trial court erred when it told the jury that the instructions on intoxication were being given at his counsel's request. The record does not reflect that defense counsel objected to this alleged error either before, after or during the trial court's jury instructions. Further, the Defendant has not made a sufficient showing that the trial court's comments were erroneous or that such comments were sufficient to downplay the importance of the instruction. No showing has been made that the Defendant was prejudiced by the comments.
The Defendant alleges that when defense counsel objected to leading questions, the court overruled and cautioned the State "not to be repetitious because it isn't necessary. You have established that there was a weapon ..." This statement occurred when defense counsel objected to the State's questioning of a witness, claiming the State was leading the witness and being repetitious. The court overruled the objection, but cautioned counsel not to be repetitious because it was not necessary. The trial court then stated, "You have established that there was a weapon ..." The record indicates that defense counsel did not object to the trial court's comment or move for a mistrial. Although the trial court did comment on the evidence by stating that the Prosecution had established that there was a weapon, the court did not make a comment as to whether the State linked the weapon to the Defendant. Accordingly, the Defendant has failed to show that he was prejudiced by the comment or that the comment mandated a mistrial.
The Defendant alleges error in the following statement, emphasizing the italicized portion:
BY THE COURT: ... [W]hen I sustain an objection I will turn to you and instruct you to wipe that particular statement from your mind, and not consider it later in any of your deliberations. And I don't meanbut you're human like myself and you have to abide by the rules. (Emphasis added).
The Defendant makes no showing or argument as to how this statement was erroneous or how such statement prejudiced him.
Next the Defendant asserts that he was prejudiced by the following statement: When the State was questioning Thomas Cornwell, a man originally charged in connection with the case, the State asked, "And subsequently the Grand Jury no billed you, which means you weren't guilty. They didn't find *453 enough" defense counsel objected, claiming the Prosecution's question/statement was an incorrect statement of the law. The court then stated, "That doesn't seem harmful but the jury is instructed to ignore the comments of both counsel." The record does not indicate that defense counsel objected when the trial court, in its admonishment, commented that the State's question/statement did not "seem harmful." Although the trial judge's comment may be considered a comment on the evidence, the Defendant has failed to show that he was prejudiced by the comment. The Defendant has not shown that the Prosecution's comment was actually erroneous. As a result, the Defendant has not shown he was prejudiced by the trial court's statement that the question/statement by the State "did not seem harmful."
Accordingly, we find no merit in the Defendant's assertions that he was denied a fair trial by these comments.

CONCLUSION
For these reasons, the Defendant's conviction for second degree murder is affirmed.
AFFIRMED.